LOTHAR KOSZEWA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Koszewa v. Commissioner
Docket No. 19177-92
United States Tax Court
T.C. Memo 1994-458; 1994 Tax Ct. Memo LEXIS 463; 68 T.C.M. (CCH) 714; September 14, 1994, Filed *463 Decision will be entered for respondent. Lothar Koszewa, pro se. For respondent: J. Paul Knap. RAUM
RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined income tax deficiencies of $ 628 and $ 653 for petitioner's taxable years 1989 and 1990, respectively. At issue is whether certain "extended earnings" payments to an independent insurance agent are subject to self-employment taxes, pursuant to sections 1401 and 1402. [1] The facts have been stipulated. Petitioner resided in Milwaukee, Wisconsin, at the time he filed his petition. In October 1979, petitioner executed an agreement entitled "Career Agent's Agreement" with American Family Mutual Insurance Company, American Family Life Insurance Company, and American Standard Insurance Company of Wisconsin, all of which are hereinafter referred to in the singular as the "Company" and collectively as the "Companies". Under the terms *464 of the agreement, amounts described as "extended earnings" became payable to certain Company agents [2] "when this agreement is terminated," provided that certain requirements were met. The requirements included the following: [3] (1) the agent had to have represented the Company as a local agent for not less than 5 consecutive years immediately prior to termination; (2) the agent had to have a specified number of policies "in force" at the time of termination; and (3) the agent could not "associate himself in any sales or sales management capacity with another insurer engaged in writing any of the kinds of insurance written by the company". The agreement contained no additional conditions regarding the cause of termination or the agent's age at the time of termination. *465 Under the agreement, the extended earnings to which a qualifying agent was entitled were to be calculated as a specified percentage of the "renewal service" fees paid to the agent during his final 6 or 12 months [4] *466 prior to termination. Such renewal service fees were defined by the agreement as amounts paid to an agent "as * * * compensation" when an insurance policy is renewed, and were computed as a percentage of the premiums paid by the insured. [5] The agreement also provided that "In the event of the agent's death, his legal representatives shall be entitled to all of the [extended earnings] benefits * * * which the agent would have received had he not died." The agreement further provided that: It is the intent of the parties hereto that the agent is not an employee of the Company for any purpose, but is an independent contractor for all purposes and in all situations and reserves full control of his activities with the right to exercise independent judgment as to time, place and manner of soliciting insurance, servicing policyholders and otherwise carrying out the provisions of this agreement.
Petitioner's association with the Companies was terminated as of December 31, 1987, and he elected under the agreement to receive extended earnings from the Companies over the course of 3 years following termination, i.e., the calendar years 1988, 1989, and 1990. He thereafter received payments for extended earnings in the aggregate respective amounts of $ 4,826 during 1989 and $ 4,988 during 1990 in accordance with the terms of the agreement. [6]
*467 Petitioner reported the extended earnings received during 1989 and 1990 on line 22 (entitled "Other income") of his 1989 and 1990 Federal income tax returns (Forms 1040), with the accompanying description "EXTENDED EARN INS". However, he did not include the extended earnings received during those years on either Schedule C (entitled "Profit or Loss From Business") or Schedule SE (entitled "Social Security Self-Employment Tax") of his 1989 and 1990 returns. Thus, although the extended earnings were reported as part of petitioner's Federal gross income, they were not reported as income from self-employment for self-employment tax purposes. Accordingly, petitioner did not pay self-employment tax on the extended earnings received during 1989 and 1990. During 1988, 1989, and 1990, petitioner worked as an insurance salesman under the name of RK Insurance Agency and Associates (RK), which was operated as a sole proprietorship. Petitioner properly reported the income, expenses, and net profit of RK on Schedules C and SE of his tax returns for 1989 and 1990. [7] During years prior to 1988, petitioner reported his employment status with the Companies on his Federal income tax returns as *468 a self-employed independent contractor, and included the income received from the Companies on Schedules C and SE of his returns. The Commissioner determined deficiencies against petitioner for 1989 and 1990 in the amounts of $ 628 and $ 653, respectively. The deficiency notice stated: On lines 22, pages 1, of your 1989 and 1990 returns, you reported $ 4,826 and $ 4,988 of "Extended Earn Ins". These amounts are subject to self-employment tax pursuant to Internal Revenue Code section 1401. However, they were not included in the calculation of your reported 1989 and 1990 self-employment tax. Inclusion of these items increases your 1989 and 1990 self-employment tax liabilities to $ 1,599 and $ 3,879, respectively.
Section 1401 imposes a tax (familiarly known as self-employment tax) on the "self-employment income" of every individual who has *469 such income. Self-employment income is defined in section 1402 to mean "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions * * * attributable to such trade or business". Sec. 1402(a) and (b). The issue for decision in this case is whether the extended earnings payments that petitioner received during 1989 and 1990 represented self-employment income within the meaning of section 1402. We hold that they did. In Newberry v. Commissioner, 76 T.C. 441, 444 (1981), this Court held that, for income to be taxable as self-employment income, "there must be a nexus between the income received and a trade or business that is, or was, actually carried on." (Emphasis added.) We further stated in regard to this "nexus" standard that the "income must arise from some actual (whether present, past, or future) income-producing activity of the taxpayer before such income becomes subject to * * * self-employment taxes". (Emphasis added.) Id. at 446. Applying this standard to petitioner, there is no question that the extended earnings payments received by him *470 during 1989 and 1990 related to the trade or business activity in which he was engaged while associated with the Companies. Several factors point in this direction. First, to qualify for such payments, petitioner had to be associated with the Companies for a certain number of years, have a certain number of policies in place at the time of termination, and refrain from direct competition with the Companies. All of those requirements obviously related in one way or another to petitioner's original business with the Companies. Second, the amount of such payments was calculated by reference to the renewal commissions that petitioner earned in his final months with the Companies, a criterion obviously tied to petitioner's services to the Companies. Third, the agreement which provided for such payments stated that petitioner was to be considered "an independent contractor for all purposes and in all situations". (Emphasis added.) And fourth, during years prior to 1988, petitioner himself reported income received from the Companies as self-employment income. It was only after petitioner terminated his association with the Companies that he treated income that he received from *471 the Companies, i.e., the extended earnings payments, as not subject to self-employment tax. [8] However, for the reasons already stated, such income was integrally related to his previous business with the Companies, in which he acted as a self-employed independent contractor. The extended earnings payments were, therefore, clearly received in respect of a prior "trade or business * * * actually carried on" by petitioner. Newberry v. Commissioner, supra at 444. The principles set forth in Newberry were followed in Dunn v. Commissioner, T.C. Memo. 1994-414, involving "extended termination payments", and in Milligan v. Commissioner, T.C. Memo. 1992-655, *472 where "termination payments" paid by an insurance company to one of its independent agents in a year following the termination of his agency relationship were held to be subject to self-employment tax. The same principles were also followed in Erickson v. Commissioner, T.C. Memo. 1992-585; Dacey v. Commissioner, T.C. Memo. 1992-187; Becker v. Tomlinson, 9 AFTR 2d 1408, 62-1 USTC par. 9446 (S.D.Fla. 1962). We reach the same result here. Accordingly, the Commissioner's determination of tax deficiencies for each of the years at issue is sustained. Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue.↩
2. The agreement provided for extended earnings with respect to agents of American Family Mutual Insurance Company and American Standard Insurance Company of Wisconsin, but apparently not for the agents of American Family Life Insurance Company.↩
3. The agreement also contained certain paperwork and reporting requirements not relevant to this case.↩
4. For American Family Mutual Insurance Company, the applicable period was 12 months, and for American Standard Insurance Company of Wisconsin the applicable period was 6 months.↩
5. The applicable percentage varied according to the agent's number of consecutive years of service prior to termination, and the particular company involved. For example, the applicable percentages for qualifying agents of American Family Mutual Insurance Company were as follows: ↩
Consecutive Years of Service
Percentage of Premiums
At least 5 years but less than 10 years
50 percent
At least 10 years but less than 15 years
100 percent
15 years or more
150 percent
6. There is no indication in the record as to whether or how much petitioner was paid as extended earnings for 1988, which in any event is a year not at issue in this case.↩
7. Whether the activities of RK were reported on Schedules C and SE for the tax year 1988 is not clear, since petitioner's 1988 return was not made part of the record.↩
8. Indeed, even after terminating his association with the Companies, petitioner continued to work in the same line of business (insurance sales) as a sole proprietor and he reported the proprietorship earnings of that business on Schedule C and on Schedule SE as self-employment income of his tax returns.↩